DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal is from the March 22, 2005 judgment of the Lucas County Court of Common Pleas, Juvenile Division, which awarded permanent custody of Jamilah P. to appellee. Upon consideration of the assignments of error, we affirm the decision of the lower court. Appellants, Amber P. and Richard M., parents of the minor child, assert the following assignments of error on appeal in a consolidated appeal:
 {¶ 2} "Assignment of Error No. 1: The trial court erred when it permanently terminated the parental rights of Amber P. as the decision was against the manifest weight of the evidence."
 {¶ 3} "Assignment of Error No. 2: The trial court erred when it permanently terminated the parental rights of Richard M. as the decision was against the manifest weight of the evidence."
 {¶ 4} Two days after the birth of Jamilah P., a/k/a Jamilah M., appellee filed a complaint in dependency requesting permanent custody of the child. At that time of the birth of Jamilah P., her father was incarcerated. Appellee alleged that they had been working with the family for more than a year regarding an older sibling who was adjudged a dependent and neglected child on January 15, 2004. Because the parents had failed to make significant progress on their case plan as to the older child, appellee was also seeking permanent custody of the older child in a separate proceeding. Because appellee believed that Jamilah P. was at risk of being neglected if released to the mother's care, and because appellee believed that it was futile to attempt to work with the family further, appellee was immediately seeking permanent custody of Jamilah P.
 {¶ 5} Following a hearing on December 10, 2004, the court immediately placed Jamilah P. in the temporary custody of appellee. Appellee filed a case plan on December 29, 2004, with a goal of adoption of Jamilah P. Appellee listed as among its concerns the father's history of violent behavior, including domestic violence; the father's use of narcotics; the father's untreated mental illness; the lack of family housing; the mother's depression; and the father's inappropriate parenting of the parents' older child. Appellee stated that it was unable to provide services before removal of Jamilah P. due to exigent circumstances.
 {¶ 6} Following a hearing on December 23, 2004, the magistrate found that Jamilah P. was a dependent child as to the mother. The trial court adopted the magistrate's decision as its own on January 19, 2005. On February 11, 2005, the court-appointed special advocate and guardian ad litem filed her report recommending that permanent custody be awarded to appellee.
 {¶ 7} A hearing was held on February 15, 2005. Because the mother had agreed in mediation to the adjudication of Jamilah P. as a dependent, the hearing proceeded only as to the issue of disposition regarding the mother. The hearing involved both the adjudication and disposition phases regarding the father. Although the father did not attend the hearing, he was represented by counsel.
 {¶ 8} Appellee submitted the following evidence at the hearing regarding the adjudication phase of the proceedings relative to the father. The caseworker testified that she had been involved with the family since October, 2003, regarding the custody of the couple's older son. By the time of Jamilah P.'s birth, the father had made very little progress on his case plan objectives. He had failed to complete psychological testing, he continued to use narcotics, and was incarcerated for a minimum term of five months. Following the submission of this evidence, the court adjudicated Jamilah P. to be a dependent child as to the father.
 {¶ 9} With respect to the disposition phase, appellee introduced the following evidence. A clinical therapist for Harbor Behavioral Health Care testified that she assessed the mother in April 2004 and diagnosed the mother with a depressive disorder, not otherwise specified. The therapist recommended a psychiatric evaluation because the mother did not have insurance to pay for medication she had been taking. Appellee also referred the mother to a women's group therapy because she denied that she was being abused. On September 7, 2004, the therapist had closed the mother's file for failure to return. However, the mother returned on September 29, 2004, to attend her first therapy session. She only attended one other session on October 13, 2004. The mother explained that she did not think that she needed to participate because she believed that she was getting her son back soon and her new baby was due in November. The father was in jail at that time and she was planning to move to another state the following month. At the October session, the mother stated that the father had abused other women, but not her. She further stated that she had left him. The mother was still planning to get her son back as late as March 2005.
 {¶ 10} A clinical counselor for Harbor Behavioral Health Care testified that she assessed the father on April 14, 2004. He denied the allegations that led to the removal of his son and the circumstances that led to his incarceration for aggravated menacing. She recommended a psychological evaluation because the father denied much of the information provided by appellee. The father called two-to-three weeks later asking if an appointment had been made for him. She told him that an appointment had not been scheduled and that it would take four-to-six weeks to do so. Typically, the office calls the parent to announce that the appointment has been set. For some reason, an appointment was never scheduled. The counselor could not recall, but presumed that she sent the father a letter stating that since they had not heard from him, she would close his file. She never heard from the father again.
 {¶ 11} A social worker testified that she became involved with these parents in October 2003. At that time, the family was homeless and living under a bridge in a car. She completed a diagnostic assessment and made recommendations for domestic violence treatment; offender's treatment; anger management; substance abuse treatment; and, later, parenting classes. There was also a referral for mental health assessments and, later, for psychiatric and psychological evaluations. The social worker believed that the mother did not begin to seek services until after the father was incarcerated. The mother repeatedly said that she was going to do it, but never did. However, the mother had told the social worker a few weeks prior to this hearing that she had completed most of the group therapy. The only other service the mother received was a substance abuse assessment.
 {¶ 12} The father's services consisted of a substance abuse assessment and a diagnostic assessment. The father admitted to another caseworker at the beginning of the case that he had been diagnosed with delusional schizophrenia while incarcerated. Although the caseworker had ruled out this diagnosis, she had recommended psychiatric testing because of his statements. The social worker had regular contact with the father until he was incarcerated in August 2004 for five months. While incarcerated, the father did not make any inquiries about his unborn child. Since his release, the social worker has not had any contact with the father. The mother stated that she has no knowledge of the father's whereabouts.
 {¶ 13} At first, the mother did not intend to sever her relationship with the father. She told the social worker that the father had been violent in the past but now was only very controlling. In August 2004, she was told that if she did not leave him and he failed to complete his services, that she would lose her child. She then said that she was no longer going to continue the relationship. She contemplated leaving the state to give birth, but did not do so because she did not want to leave her son.
 {¶ 14} The social worker also testified regarding the family's housing situation. The couple was living with friends shortly after their older child was removed from their custody. The agency provided a security deposit for an apartment, but the parents were evicted about three months later when they did not continue to pay the rent. The mother lived with her sister while the father was incarcerated. At the time of the hearing, the mother was living with someone else. Neither parent is employed. The mother was living on welfare at the time the child in this case was born.
 {¶ 15} The mother has had regular visitations with her older son. The visitations were changed in February 2004 because the father was calling the son names and the mother made excuses for the father. Parenting classes were then added to the services. However, no referral was made for parenting classes because the parents had not made significant progress on the case plan.
 {¶ 16} The social worker and others observed the mother with her children and never saw inappropriate behavior on her part. She had regular visitations with the children. They determined that the mother had bonded with Jamilah P. The maternal grandmother had temporary custody of the older child, but she does not want to raise another baby. Therefore, Jamilah P. was placed in a foster home and the foster parents are willing to adopt her. The social worker believed that the best interests of the child would be served by giving appellee permanent custody of the child.
 {¶ 17} At the conclusion of the hearing, the court found that appellee had made reasonable efforts to prevent the ongoing removal of Jamilah P. from the home. The court found that there was clear and convincing evidence that that child cannot and should not be placed with either parent within a reasonable period. This conclusion was based upon the facts that neither parent had obtained stable housing, employment, or mental health services during their involvement with the agency. Therefore, the court awarded permanent custody of Jamilah P. to appellee. Both the mother and father sought an appeal to this court. Their assignments of error are consolidated for our review.
 {¶ 18} Jamilah P. was found to be a dependend child as that term is defined by R.C. 2151.04. Appellants do not raise any assignments of error relating to that determination. Instead, appellants' arguments challenge only the disposition order of the trial court.
 {¶ 19} After the court adjudicated Jamilah P. a dependent child, the court had the authority to order that Jamilah P. be committed to the permanent custody of appellee. R.C.2151.353(A)(4). To do so, the court was required to make two findings. First, the court was required to find, in accordance with R.C. 2151.414(E), that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent. Second, the court was required to find, in accordance with R.C. 2151.414(D), that the permanent commitment is in the best interest of the child. R.C.2151.353(A)(4).
 {¶ 20} Under R.C. 2151.414(E), the trial court is directed to consider all relevant evidence to determine, by clear and convincing evidence, whether one or more of the 16 conditions listed in R.C. 2151.414(E) exist as to each of the child's parents. If the court finds that any one or more of these conditions exist, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent.
 {¶ 21} In this case, the court concluded that the conditions of R.C. 2151.414(E)(4), (14), and (16) existed. The R.C.2151.414(E)(4) factor is that:
 {¶ 22} "The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child."
 {¶ 23} The court found that the "other actions" in this case included the failure of the parents to provide a permanent home for the child and their failure to utilize the services recommended by appellee, which are designed to remedy the problems which caused removal of the child.
 {¶ 24} The R.C. 2151.414(E)(14) factor is that:
 {¶ 25} "The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect."
 {¶ 26} The basis for this finding is again the fact that the parents did not and could not provide a stable home for Jamilah P.
 {¶ 27} Finally, under R.C. 2151.414(E)(16), the court may base its decision on:
 {¶ 28} "Any other factor the court considers relevant."
 {¶ 29} The additional factors, which the court found relevant, included the following. First, the failure of the parents to correct the problems connected with the removal of an older sibling. Second, the unemployment of the parents and their lack of any source of support. Third, their failure to provide housing for their children. Fourth, the failure of the father to even attempt communication with Jamilah P. since her birth. Fifth, the failure of the parents to understand why their children have been removed from their care and their unwillingness to participate in services to obtain the return of their children.
 {¶ 30} Pursuant to R.C. 2151.414(D), the court shall consider all relevant factors, including those listed in the statute to determine if an award of permanent custody to appellee would be in the child's best interest.
The decision of the trial court terminating parental rights and providing for the disposition of the minor child will not be reversed if a review of the record reveals that that the trial court had sufficient evidence to satisfy the clear and convincing standard. In re Bradley John B., 6th Dist. Nos. H-03-037 and H-03-041, 2004-Ohio-1328, ¶ 24, citing In re Wise (1994),96 Ohio App.3d 619, 626.
 {¶ 31} The mother challenges that there was no competent and credible evidence that permanent placement of the minor child with appellee was in the child's best interest nor that the minor child could not be returned to the mother within a reasonable period of time. She argues that since the hearing was held approximately two months after the child was born, the mother could not have "continuously and repeatedly" failed to correct behavior that led to the child's removal. Furthermore, she asserts, her regular and appropriate visitations with the minor child exhibited her interest in her child.
 {¶ 32} We disagree. The trial court based its conclusion that the minor child should not be placed with the parents in part upon their behavior that occurred prior to the birth of the minor child. There is no error in so doing. While there was little time for the mother to correct the problems in this case after the minor child was born, appellee has been working with the mother to remedy the same problems in connection with the older sibling for over a year. At the time of the hearing, it was clear that the mother could not or would not take the action necessary to be able to provide a stable home for her newborn child.
 {¶ 33} As to the father, he asserts that none of the factors listed in R.C. 2151.414(E) are applicable to him since he was incarcerated at the time of the birth of the minor child until approximately one month before this hearing.
 {¶ 34} We disagree. R.C. 2151.414(E)(4) is clearly applicable in this case. The father made no attempt to communicate with his newborn child, nor did he inquire as to her well-being. He did not make any attempt to contact appellee regarding the child. He also did not attend the adjudication and disposition hearing. Furthermore, the father is unwilling or unable to provide a stable home for Jamilah P. Even though the father was incarcerated, he had an obligation to provide for his child.
 {¶ 35} We find both assignments of error not well-taken. Having found that the trial court did not commit error prejudicial to appellants and that substantial justice has been done, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J. Mark L. Pietrykowski, J. William J.Skow, J. concur.