DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Nicole J., appeals the decision of the Lucas County Court of Common Pleas, Juvenile Division, which terminated her parental rights to Jasmine H. and Ja'Shawn H. and awarded permanent custody to the Lucas County Children Services agency ("LCCS"). The decision also terminated the parental rights of the children's biological fathers; however, neither father is a party to this appeal. For the following reasons, we affirm.
 {¶ 2} On October 18, 2002, LCCS filed a complaint alleging that the children were dependent and neglected. The complaint alleged that Jasmine's father was unknown and that Ja'Shawn's father's whereabouts were unknown; that LCCS had "been involved" with the family since September 2002; that appellant "admittedly allows a known drug user" to stay in her home; that appellant has a long history of substance abuse and is currently using drugs; and that appellant does not know who Jasmine's father is.
 {¶ 3} The magistrate ruled that the children were adjudicated neglected and dependent, ruled that removal of the children from the home is in their best interests, and that "there are no legal fathers at this time."[1] A case plan completed on January 17, 2003, states that Ja'Shawn father is incarcerated in another state and has not contacted the children, and lists services for appellant to complete, including drug treatment and mental health treatment. Along with drug treatment, appellant was ordered to participate in the family drug court program, which included weekly urine screenings. The stated goal was reunification of the family.
 {¶ 4} On May 19, 2003, a review hearing was held, and the court approved the case plan and the children's placement. An entry states that the children were temporarily placed with a relative, that appellant visited regularly, and that reasonable efforts were made to finalize the plan. The plan was approved by the trial judge on July 2, 2003.
 {¶ 5} Appellant was arrested for crack cocaine possession over Memorial Day weekend of 2003, and was in prison from June 12, 2003 until July 10, 2003. On July 3, 2003, a family drug court hearing was held. Appellant was found noncompliant with the case plan's treatment recommendations. On July 10, 2003, another family drug court hearing was held and it was again determined that appellant was not complying with drug treatment. She was ordered to attend treatment meetings and to provide a urine sample that day and also before the next hearing. On July 17, 2003, at yet another family drug court hearing, appellant was found to be in compliance with treatment recommendations, and ordered to continue treatment and urine screenings. Notably, appellant was able to be compliant with the case plan one week after her release from prison.
 {¶ 6} A case plan signed July 16, 2003, allowed appellant supervised visitations with the children twice a week. It notes that Ja'Shawn's father was still believed to be incarcerated and that Jasmine's father remained unknown. On July 23, 2003, LCCS filed a motion to extend temporary custody of the children, stating that reasonable efforts were being made to reunify the children with appellant, that there "has been significant progress on the case plan," and that there was reasonable cause to believe that the children would be "reunified with [appellant] or otherwise permanently placed" within six months. The motion was granted by entry on October 16, 2003.
 {¶ 7} Family drug court hearings on July 24, July 31, August 7, August 14, August 21, August 28, September 9, September 11, September 18, September 25, October 2, October 16, October 30, November 13, December 4, December 18, 2003, and January 15, 2004, found that appellant was complying with her treatment plan. On January 16, 2004, a case plan review indicates that appellant was still participating in services, that she "puts them into practice," that she was working, and that the stated goal was still reunification with the children. The "family risk assessment matrix" was "low." It also states that appellant had proven herself drug free and has addressed her mental health issues.
 {¶ 8} On February 8, 2004, LCCS filed a motion stating that it was in the best interests of the children to be placed in appellant's home "on a staggered basis," that LCCS's temporary custody be terminated, that appellant regain legal custody of the children upon their return, and that LCCS continue protective supervision for six months. On February 19, 2004, appellant was awarded legal custody of Jasmine and on March 18, 2004, she was awarded legal custody of Ja'Shawn.
 {¶ 9} Through April 29, 2004, continued family drug court hearing entries state that appellant was in compliance with her treatment plans. On May 6, 2004, the trial court entered on its journal a finding that appellant had successfully completed "all aspects" of the family drug court program, and terminated her participation. On May 24, 2004, a case plan was filed for another child of appellant, born on April 14, 2004. That case plan stated that the new baby, Madison, was in the temporary custody of LCCS, that the goal was adoption, and established a new goal of maintaining Jasmine and Ja'Shawn in appellant's home without need for removals.
 {¶ 10} On June 21, 2004, a hearing on a complaint in dependency and neglect and a motion for permanent custody was held for Madison. Appellant's parental rights to Madison were terminated, as the judgment entry states, because appellant had "decided she cannot raise this child and she feels it to be in the best interest of Madison for her to consent to the award of permanent custody to LCCS." The court in its judgment entry found that appellant "will soon successfully complete Drug Court, and she recently had two children returned to her custody because of her progress."
 {¶ 11} On June 28, 2004, LCCS filed a motion to change Jasmine's and Ja'Shawn's disposition and for an emergency shelter care hearing. The motion alleged that the children were left with inappropriate care takers and that appellant had admitted relapsing into drug use; testimony later established that the children were found in the care of appellant's retarded sister and that appellant was allowing an alleged gang member and drug user to live in her home and care for the children. That same day, the court issued an ex parte order finding probable cause that the children needed to be removed from the home to prevent "immediate or threatened physical or emotional harm" and that shelter care was required for their protection. On July 19, 2004, a case plan was filed changing the goals for the children to reunification with appellant.
 {¶ 12} Service of a summons for August 16, 2004, containing these pleadings, was attempted on Ja'Shawn's father but was unable to be perfected because he was no longer at the address. At that hearing, appellant stipulated that the father had been incarcerated for at least five years; this was later verified. Temporary custody of the children was awarded to LCCS.
 {¶ 13} In September 2004, appellant's supervised visitation with the children was terminated through an emergency case plan change which alleged that appellant was leaving visitation early, falling asleep, and had admitted to relapsing into crack cocaine use. The children were reportedly having pronounced behavioral problems after visiting with appellant.
 {¶ 14} On November 15, 2004, appellant was sentenced to 11 months in prison upon her guilty plea to the charge of attempt to commit possession of crack cocaine, a felony of the third degree. She had been given probation on the suspended sentence, but had violated probation by failing to report and failing to submit to urine screenings. In a case plan review on January 12, 2005, LCCS noted that after appellant had relapsed in September, she had not followed through with any case plan services or drug treatment.
 {¶ 15} On December 28, 2004, LCCS filed a motion for permanent custody and the termination of appellant's and both fathers' parental rights; at disposition, the caseworker testified that appellant's incarceration prompted the filing of the motion. The motion alleged that appellant again admitted to using crack cocaine and marijuana, that appellant had been charged with possession of drug paraphernalia, that appellant had left the children with inappropriate care givers, and that the children had been out of the home for over a year and were in need of a permanent placement. The matter was set for disposition.
 {¶ 16} The guardian ad litem ("GAL") filed a report and recommendations for disposition. After speaking to the children's care givers and several of appellant's family members, the GAL concluded in her report that appellant could not "live drug free" or provide a safe environment for the children, and that the children's best interests would be served by placement in the permanent custody of LCCS with adoption as the ultimate goal.
 {¶ 17} At disposition on May 24, 2005, appellant was not present, as she was incarcerated, but she was represented by counsel. Disposition proceeded on the original complaint filed October 18, 2002. Summons was made to Jasmine's father by public posting, but as he was still unknown, no counsel was appointed. Counsel for Ja'Shawn's father orally moved to withdraw as his counsel, stating that the father was incarcerated in another state and had not responded to two letters seeking his wishes. The court denied the motion, and counsel stayed through the disposition.
 {¶ 18} After receiving testimony from the LCCS caseworker, a cousin of appellant who had temporary custody of Ja'Shawn who wished to adopt him, another cousin of appellant who had temporary custody of Jasmine, and another cousin who "knew appellant well," the court found that the children should not be returned to appellant and that it was in their best interest for permanent custody to be awarded to LCCS.
 {¶ 19} Appellant raises one assignment of error on appeal:
 {¶ 20} "THAT THE JUVENILE COURT ERRED IN THAT THE EVIDENCE LACKED THE CLEAR AND CONVINCING STANDARD [sic] THAT THE MINOR CHILDREN COULD NOT BE PLACED WITH * * * MOTHER WITHIN A REASONABLE PERIOD OF TIME, PURSUANT TO O.R.C. 2151.414(B)(1)(d) AND O.R.C. 2151.414(E)(1), (2), (3), (4), (11), (13) and (14)."
 {¶ 21} Appellant argues that in fashioning her case plan, LCCS underestimated the degree of substance abuse treatment that she actually needed and failed to provide adequate services, and that therefore, appellant was unfairly burdened in her ability to complete the case service plan. She argues that she has demonstrated commitment towards her children by completing a prior case plan, including the Lucas County Drug Court Program. Appellant cites no statutory provision or case law in support of her argument. At bottom, appellant argues that LCCS failed to make reasonable efforts to prevent the children's removal from her home
 {¶ 22} When a parent appeals the termination of her parental rights, an appellate court will not disturb a ruling unless it is against the manifest weight of the evidence. Some competent, credible evidence must exist to support the essential statutory elements for a termination of parental rights. In re S. (1995),102 Ohio App.3d 338, 344-345; Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 23} "[A]lthough termination of parental rights should be a last resort, this extreme disposition is still explicitly sanctioned when the child's best interests demand it." In reHardy, 7th Dist. No. 04-MA-11, 2004-Ohio-4542, ¶ 22, citing Inre Cunningham (1979), 59 Ohio St.2d 100. Hence, "before any court may consider whether a child's best interests may be served by permanent removal from his or her family, there must be first a demonstration that the parents are `unfit."' In re Stacey S.
(1999), 136 Ohio App.3d 503, 516, citing Quillon v. Walcott
(1978), 434 U.S. 246, 255. Parental unfitness is demonstrated by clear and convincing evidence supporting findings pursuant to R.C. 2151.414. That statute provides that a parent's rights may not be terminated unless the court finds evidence that 1) the child, "* * * cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent," R.C. 2151.414(B)(2), and 2) that a grant of permanent custody of a child to a children's service agency is in the child's best interests. R.C. 2151.414(B)(1). A finding or findings pursuant to each prong are required and all findings must be supported by clear and convincing evidence, "sufficient to produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v.Ledford, supra; In re William S. (1996), 75 Ohio St.3d 95.
 {¶ 24} To establish the first prong, that the children cannot be placed with a parent within a reasonable amount of time, a court must determine by clear and convincing evidence that at least one of the sixteen statutory factors of R.C. 2151.414(E) exists. If one or more of the factors are found to exist, the court is required to enter such a finding. Id. In appellant's case, the trial court found applicable the factors of R.C.2151.414(E)(1), (2), (3), (4), (11), (13) and (14). Those sections state in material part:
 {¶ 25} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 26} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section2151.353 of the Revised Code;
 {¶ 27} "(3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03
of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;
 {¶ 28} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 29} "* * *
 {¶ 30} "(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or2151.415 of the Revised Code with respect to a sibling of the child.
 {¶ 31} "* * *
 {¶ 32} "(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.
 {¶ 33} "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect."
 {¶ 34} In her brief, appellant has failed to argue each issue beyond conclusory assertions that she has (1) shown "clear commitment to her children by successfully completing the Lucas County Drug Court Program"; (2) that LCCS "underestimated the degree of substance abuse assistance" she required to stop abusing drugs; (3) the second case plan put into place when the children were removed from her care the second time "did nothing more than set up [appellant] for failure of the plan [sic]." At bottom, appellant only challenges the finding under R.C.2151.414(E)(1), that LCCS failed to make "reasonable efforts" to reunite her with her children. The judgment entry states that appellant was provided "substance abuse assessment and treatment; participation in the drug court program; mental health assessment and treatment; parenting instruction; assistance with housing and visitation."
 {¶ 35} Each of appellant's assertions is belied by her record in this matter. Although R.C. 2151.414(E)(1) charges LCCS with providing "reasonable case planning" and exerting "diligent efforts" to help a parent remedy a problem causing removal, Inre Alexis K. et al. (2005), 160 Ohio App.3d 32, 41, the several years of counseling, treatment, and Drug Court programs appellant received were certainly reasonable. Appellant's children were removed the second time because she once again began using drugs and was once again incarcerated. Before her incarceration, she failed to complete the referrals and assessments in order to have appropriate services provided to her. Although appellant did participate successfully in the Drug Court program, her relapses into drug use, her admitted illegal drug use which spanned over a decade, and the testimony of her family and the caseworker established that she was unable to put any parenting skills or principles into practice due to her continual relapses. Moreover, unlike the appellant in In re Alexis K., appellant did have an opportunity to demonstrate an ability to implement parenting and life skills learned when her children were returned; however, she demonstrated an inability to do so. Thus, the R.C.2151.414(E)(1) finding is supported by clear and convincing evidence.
 {¶ 36} If a court finds any of the statutory factors to exist, it is required to enter a finding that the child or children cannot be placed with the parent within a reasonable amount of time. Even if we were to agree with appellant in that "reasonable efforts" were not expended on her behalf, the judgment would be affirmed on the alternative statutory grounds.In re Alexis K., supra at ¶ 43, citing In re William S.
(1996), 75 Ohio St.3d 95; In re Alyssa Nicole C. (2003),153 Ohio App.3d 10, 14. More than sufficient evidence exists in the record to establish R.C. 2151.414(E)(2), that appellant's chemical dependency renders her unable to provide a home for her children, and R.C. 2151.414(E)(13), that appellant's repeated incarcerations prevented her from providing care for her children. In re Grant (1991), 81 Ohio App.3d 59.
 {¶ 37} In order to establish the second prong, the trial court must have found, by clear and convincing evidence, that a grant of permanent custody to LCCS was in each child's best interests. R.C. 2151.414(D) requires consideration of a list of non-exhaustive factors in determining whether a termination of parental rights is a child's best interests:
 {¶ 38} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 39} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 40} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 41} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 42} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 43} The trial court found that Jasmine and Ja'Shawn were in need of a permanent placement because they had been in the temporary custody of LCCS for 26 out of 29 months and that a grant of permanent custody to LCCS would facilitate adoption. This finding is supported by the record; appellant had custody of the children, under protective supervision, for approximately three months before they were again removed from her home. It also detailed appellant's criminal history and repeated incarcerations, including convictions for theft, trafficking in cocaine, assault, and soliciting.
 {¶ 44} On due consideration, we find that clear and convincing evidence supports the judgment terminating appellant's parental rights and awarding permanent custody to LCCS. Appellant's sole assignment of error is found not well-taken. The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J. Singer, P.J. Skow, J. concur.
[1] Appellant does not challenge the adjudications on appeal. No transcript of the adjudications was filed in this court.