DECISION AND JUDGMENT
{¶ 1} Appellants, Bart K. and Shaun K., appeal the judgment of the Williams County Court of Common Pleas, Juvenile Division, which terminated their parental rights to Destiny K. Bart and Shaun, father and mother respectively, have appealed separately and filed separate briefs. *Page 2 
 {¶ 2} Shaun raises the following assignment of error for review:
 {¶ 3} "The judgment of the trial court that a permanent commitment was in the best interest of the child was against the manifest weight of the evidence."
 {¶ 4} Bart's counsel has submitted a request to withdraw pursuant toAnders v. California (1967), 386 U.S. 738, asserting that there are no meritorious issues for appeal. Anders sets forth the procedure to be followed by appointed counsel who desires to withdraw for want of a meritorious, appealable issue. We have found that "the procedures enunciated in Anders, supra, are applicable to appeals involving the termination of parental rights." Morris v. Lucas Cty. Children ServicesBd. (1989), 49 Ohio App.3d 86, 87.
 {¶ 5} In Anders, the United States Supreme Court held that if counsel, after a conscientious examination of the case, determines it to be wholly frivolous he should so advise the court and request permission to withdraw. 386 U.S. at 744. See, also, State v. Duncan (1978),57 Ohio App.2d 93. This request, however, must be accompanied by a brief identifying anything in the record that could arguably support the appeal. Id. Counsel must also furnish his client with a copy of the brief and request to withdraw and allow the client sufficient time to raise any matters that he chooses. Id. Once these requirements have been satisfied, the appellate court must then conduct a full examination of the proceedings held below to determine if the appeal is indeed frivolous. If the appellate court determines that the appeal is frivolous, it may grant counsel's *Page 3 
request to withdraw and dismiss the appeal without violating constitutional requirements or may proceed to a decision on the merits if state law so requires. Id.
 {¶ 6} In this case, appointed counsel for Bart has satisfied the requirements set forth in Anders, except that he has filed notice with this court that he was unable to perfect service of his Anders brief on Bart. Counsel attempted service at Bart's last known address, a correctional facility; service was returned marked as "Attempted Not Known." Second service at another Indiana residence also failed. In support of his request, Bart's counsel states that, after carefully reviewing the transcript and record of proceedings in the trial court, and after researching case law and statutes relating to potential issues, he was unable to find an arguable, non-frivolous issue for appeal. Upon consideration, we conclude that counsel's brief is consistent with the requirements set forth in Anders, supra andPenson v. Ohio (1988), 488 U.S. 75.
 {¶ 7} Bart has not filed his own brief. However, Bart's counsel sets forth the following potential issues:
 {¶ 8} "I. The appellant was denied effective assistance of counsel.
 {¶ 9} "II. The appellant was deprived of his due process rights because he was not present at the hearing."
 {¶ 10} At the time of the disposition proceedings, both Bart and Shaun were incarcerated. Neither was present at the disposition hearing, but both were separately represented by appointed counsel. The parties, including the Williams County Department of Job and Family Services ("WCDJFS"), stipulated to the admission of *Page 4 
affidavits from Bart and Shaun. The trial court had denied motions from both Bart and Shaun to be transported from their incarceration to attend the hearing.
 {¶ 11} Our review of the record yields the following facts. One March 6, 2006, WCDJFS filed a complaint for emergency custody of Destiny, alleging that Destiny was neglected and dependent. It further alleged that both Bart and Shaun were incarcerated in Indiana and that Destiny was residing with her paternal aunt in Williams County.
 {¶ 12} At the emergency hearing, the court found probable cause that the allegations in WCDJFS's complaint were true and granted emergency custody of Destiny to WCDJFS. A guardian ad litem ("GAL") was appointed for Destiny.
 {¶ 13} On April 7, 2006, the trial court held an adjudication hearing. Bart and Shaun did not attend due to their incarceration; they were represented jointly by counsel. The court found Destiny, together with two of her siblings, neglected and dependent. Destiny's GAL recommended that Destiny's paternal aunt and uncle, Teresa and Curtis, have temporary custody of Destiny. Appellants have not challenged the adjudications of dependency and neglect on appeal.
 {¶ 14} On February 2, 2007, the court held an annual review and by-pass hearing, and found clear and convincing evidence justifying the continued placement of Destiny in the temporary custody of WCDJFS. On January 9, 2008, WCDJFS filed a motion for permanent custody of Destiny.
 {¶ 15} Prior to the commencement of disposition, the parties stipulated to a number of exhibits, which established the following facts. Shaun had been incarcerated *Page 5 
since February 2006, in Indiana, and remained incarcerated through the case. Her presumptive release date was stipulated to as November 25, 2009, with a mandatory release date of February 27, 2014. Bart was incarcerated in Indiana from February 2006, through July 7, 2007. He was re-incarcerated on August 21, 2007, and remained incarcerated through the rest of the case. His presumptive and earliest possible release date was January 11, 2009.
 {¶ 16} The trial court, in its judgment entry, found that since Destiny's birth in November 2001, Shaun was incarcerated as follows: for 100 days beginning in March 2004, for check deception; for 60 days in March 2005, for driving while under suspension; and her current incarceration, which began in February 2006; and in February 2007, she was convicted for dealing methamphetamine and was sentenced to ten years incarceration. Due to Shaun's successful completion of a "Clean Lifestyles is Forever" program, she has an early release date of November 2009. Shaun testified, by way of affidavit, that she has requested early release and placement into a community corrections halfway facility, which permits residents to have children live with them.
 {¶ 17} Also in its judgment entry, the trial court found that Bart has been incarcerated as follows: for one year for possession of a controlled substance; for one and one-half years for non-support of a dependent child; on August 28, 2006, he was convicted of dealing a represented controlled substance and was sentenced to three years but released on July 6, 2007; and on August 21, 2007, he was convicted of non-support of *Page 6 
a dependent and was sentenced to eight years, with six years suspended and three years of probation.
 {¶ 18} The trial court further found that, after Bart was released from incarceration on July 6, 2007, he contacted WCDJFS on July 12, 2007, to request visits with Destiny and her siblings. The WCDJFS caseworker testified that she advised Bart that he would need permission from his parole officer to visit the children; she also testified that Bart did not call her again to follow through; the trial court found that he did not do so and no visitation occurred. The trial court further found that, with the exception of the July 12, 2007 telephone call, Bart made no attempt to visit Destiny.
 {¶ 19} The trial court also found that Destiny was in the temporary custody of WCDJFS since March 7, 2006. As of the disposition hearing on July 22, 2008, Destiny was in WCDJFS's temporary custody for more than 12 months in a consecutive 22 month period. After WCDJFS received temporary custody, Destiny was placed in the home of Curtis and Teresa, her paternal aunt and uncle. She was removed from Curtis and Teresa's care in June 2006, and placed in foster care; the removal was prompted by Destiny's confidence in counseling that she had been inappropriately and sexually touched. No perpetrator was identified. That admission, combined with sexually aggressive behaviors and other admissions of mistreatment, prompted her placement into foster care. In foster care, Destiny showed marked improvement and the sexual behaviors ceased. In August 2006, Curtis and Teresa sought reunification with Destiny *Page 7 
and WCDJFS instituted a case plan to enable reunification. Destiny was replaced with Curtis and Teresa in December 2006.
 {¶ 20} One month later, however, Curtis and Teresa again reported that Destiny was having behavioral problems and alleged that she was acting out with sexual behaviors. WCDJFS continued working on case plan services with Curtis and Teresa, but by April 2007, Curtis and Teresa admitted that "Destiny's behaviors were too much for them to handle," according to the WCDJFS caseworker.
 {¶ 21} Thus, in April 2007, Destiny was placed in a foster home together with an older sibling; the foster couple wished to adopt and the placement was labeled "pre-adoptive." The WCDJFS caseworker testified that Destiny has integrated into the foster home, and according to the caseworker, Destiny's therapist discontinued counseling because Destiny was very well-adjusted in that home. The caseworker also testified that, throughout the case, she kept in contact with Bart and Shaun, having traveled to Indiana several times to meet with them personally. She also brought Destiny's older siblings to visit Bart and Shaun in their incarceration. Bart and Shaun suggested several family members who might take temporary custody of Destiny; however, upon investigation, the caseworker found no one willing to assume even temporary custody of Destiny or her siblings. These investigations led to WCDJFS's filing of a motion for permanent custody.
 {¶ 22} Evidence and testimony was also submitted proving the trial court's finding that Shaun and Bart's parental rights to three of Destiny's siblings were terminated by the Steuben County, Indiana Circuit Court on June 13, 2007. *Page 8 
 {¶ 23} Prior to the commencement of disposition, the trial court conducted an in camera interview with Destiny. The interview occurred on the record, with Destiny's GAL present. We have reviewed the record of this interview, and conclude that it provides clear and convincing evidence to support the trial court's findings of fact, to wit: "Destiny has very little recollection of having lived with either parent," and "Destiny does not have a significant bond with either parent."
 {¶ 24} With respect to Destiny's best interests, the trial court found that Destiny would benefit from a legally secure placement, which cannot occur without a grant of permanent custody to WCDJFS; that Destiny's foster parents wish to adopt both Destiny and her biological sibling; that Destiny has a significant bond with her foster parents and their biological children; and that no suitable relatives are able to take custody of Destiny.
 {¶ 25} A court deciding whether to award permanent custody must undertake the following two-part analysis: (1) first, it must determine, by clear and convincing evidence, whether any of the criteria set forth at R.C. 2151.414(B)(1) apply; (2) if the answer is in the affirmative, the trial court must then determine — again, by clear and convincing evidence — whether an award of permanent custody is in the best interest of the child, pursuant to R.C. 2151.414(D).
 {¶ 26} The R.C. 2151.414(B)(1) criteria are as follows:
 {¶ 27} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period *Page 9 
ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 28} "(b) The child is abandoned.
 {¶ 29} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 30} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 31} In the instant case, the trial court stated in its conclusions of law: (1) that the children could not be placed with either parent within a reasonable time and that the children should not be placed with either parent; and (2) that the children had been in the temporary custody of the agency for 12 or more months out of the past 22 months. Thus, the conclusions of the trial court indicate that both R.C. 2151.414(B)(1)(a) and (B)(1)(d) apply herein.
 {¶ 32} In reviewing the trial court's determination that the children could not be placed with either parent within a reasonable time and should not be placed with them, pursuant to R.C. 2151.414(B)(1)(a), we look to R.C. 2151.414(E), which provides 16 factors that a court is to consider in making that determination. If a trial court, after considering all relevant evidence, finds by clear and convincing evidence that one or more of those factors exist, the court is required to enter such a finding. R.C. 2151.414(E). *Page 10 
 {¶ 33} Here, the trial court found four of the R.C. 2151.414(E) factors to exist, specifically, the factors of R.C. 2151.414(E)(4), (11), (12), and (13). Those sections provide:
 {¶ 34} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 35} "* * *
 {¶ 36} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 37} "* * *
 {¶ 38} "(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 *Page 11 
of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections.
 {¶ 39} "(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.
 {¶ 40} "(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child."
 {¶ 41} Upon a thorough and independent review of the record, we find the trial court's factual findings and conclusions of law supported by clear and convincing evidence. If one of the factors of R.C. 2151.414(E) exists and is supported by clear and convincing evidence, the trial court is required to enter a finding that the child cannot or should not be placed with the parent pursuant to R.C. 2151.414(B)(1)(a). In reD.A., 113 Ohio St.3d 88, 2007-Ohio-1105, ¶ 17.
 {¶ 42} First, pursuant to R.C. 2151.414(E)(4), the trial court found both Bart and Shaun "demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child." Evidence was elicited showing that Shaun regularly communicated with Destiny through cards and letters mailed to her while she resided with Curtis and Teresa and while in the first foster care placement. The caseworker testified that both Shaun and Bart were *Page 12 
frustrated because Curtis and Teresa refused to accept their collect phone calls to Destiny while they were incarcerated. Destiny's second, pre-adoptive placement accepted Bart and Teresa's collect calls for a period of time, but ceased when they became prohibitively expensive.
 {¶ 43} Despite the attempts at correspondence with Destiny, at least by Shaun, the trial court was still justified in concluding that, by virtue of their frequent incarcerations, Bart and Shaun both showed, by other actions, an unwillingness to provide an adequate permanent home for Destiny. During the period of time in which Bart was released from incarceration, he made only one attempt via telephone to initiate visitation with Destiny; when offered the opportunity to do so, he did not follow through and no visitation occurred. A parent's frequent incarceration which prevents them from regularly visiting with a child may constitute "actions showing an unwillingness to provide an adequate permanent home." In re M.T., 8th Dist. Nos. 90249, 90250 2008-Ohio-456, ¶ 49;In re Jamilah M., 6th Dist. No. L-05-1105, 2006-Ohio-1631, ¶ 34.
 {¶ 44} More clearly applicable are the factors of R.C. 2151.414(E)(11) and (13). Bart and Shaun stipulated to the admission of a certified judgment entry from an Indiana court which terminated their parental rights to three of Destiny's biological siblings. Although they argue that the Indiana termination judgment is currently on appeal, they acknowledge that no stay of that judgment was issued. Thus, since Bart and Shaun both admit that their parental rights to three of Destiny's siblings were terminated, clear and convincing evidence sufficiently establishes the factor of (E)(11). *Page 13 
 {¶ 45} Also, the trial court was justified in finding applicable the R.C. 2151.414(E)(13) factor. Throughout Destiny's life, both Bart and Shaun were repeatedly incarcerated. The evidence established that their incarcerations prevented them from providing care for Destiny; Destiny has spent more than half of her life out of her parents' custody. Analogous circumstances — with less lengthy and frequent periods of incarceration — existed in In re Amber L., 6th Dist. Nos. 20230034, 20230035, 20230336, 2005-Ohio-4172; In re Jasmine H., 6th Dist. No. L-05-1255, 2006-Ohio-2234; In re Deshanna R. (Mar. 30, 2001), 6th Dist. No. L-00-1373.
 {¶ 46} With respect to R.C. 2151.414(E)(12), both Bart and Shaun point to evidence they submitted which shows that they may be released from incarceration earlier than their mandatory release dates. Both Bart and Shaun's "presumptive" release dates were scheduled after the disposition hearing but within 18 months. Shaun's presumptive release potentially includes residing at a halfway house program which, she averred, would allow her to have Destiny live with her. Bart's presumptive release date of January 2009, occurred after disposition yet while the instant appeal was pending. The trial court reasonably found, however, that Bart's release date was not certain; if fully served, his incarceration at the time of disposition would continue until August 2010.
 {¶ 47} However, even if we were to find appellants' arguments well-taken with respect to the factor of R.C. 2151.414(E)(12), sufficient evidence exists to establish the other three factors found by the trial court. The existence of any one of the R.C. 2151.414(E) factors with respect to a parent requires a trial court to enter a finding that *Page 14 
the child cannot or should not be placed with that parent. Because the factors of R.C. 2151.414(E)(4), (11), and (13) clearly exist with respect to both Bart and Shaun, the trial court did not err in entering this conclusion of law.
 {¶ 48} Before permanent custody of a child can be awarded to WCDJFS, however, the trial court must have found clear and convincing evidence that termination of Bart and Shaun's parental rights was in Destiny's best interests. In re Schaefer, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 56. "The court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute." Id.
 {¶ 49} The trial court found that Destiny's best interests were served by terminating Bart and Shaun's parental rights because (1) Destiny has had little to no interaction with either parent and she has no memory of living with either parent; (2) she resides with her older biological brother with a family who wishes to adopt her; (3) Destiny wishes to be adopted by her current foster family; (4) Destiny has been in WCDJFS's temporary custody for more than 12 months out of the past 22 consecutive months; (5) Destiny is in need of a legally secure placement that cannot be achieved without a grant of permanent custody to WCDJFS.
 {¶ 50} Our independent review of the record reveals that the trial court's conclusions regarding Destiny's best interests are supported by clear and convincing evidence. Therefore, Shaun's assignment of error is not well-taken, and Bart's counsel's proposed arguments, insofar as they relate to error in the disposition, are not well-taken. *Page 15 
 {¶ 51} Bart's appointed counsel has also assigned as potential errors for review (1) that he was denied effective assistance of counsel, and (2) that it was error to deny him permission to be present at the disposition hearing.
 {¶ 52} "The right to counsel, guaranteed in these proceedings by R.C. 2151.352 and by Juv.R 4, includes the right to the effective assistance of counsel." In re Antonio C. Angelica C, 6th Dist. Nos. S-03-011, S-03-012, 2004-Ohio-82, ¶ 56, citing In re Heston (1998),129 Ohio App.3d 825, 827. In order to prevail on an ineffective assistance of counsel claim, Bart must demonstrate (1) that his counsel's performance was deficient, and (2) that the deficient performance resulted in prejudice. In re Anisha N., 6th Dist. No. L-02-1370, 2003-Ohio-2356. "To warrant reversal, `[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id., citing Strickland v.Washington (1984), 466 U.S. 668, 694.
 {¶ 53} In support, on appeal, Bart's counsel points to the dismissal of Bart's first appointed counsel, Brian Kaiser, and the reappointment of Michael Spangler as counsel. The trial court dismissed attorney Kaiser after receiving several letters from Bart, asserting that Kaiser had not adequately notified him of proceedings. However, on appeal, Bart's counsel points only to Kaiser's failure to object to WCDJFS's motion for an in camera interview with Destiny.
 {¶ 54} "R.C. 2151.414(D)(2) gives the juvenile court the option to consider either the children's desires directly or through the child's guardian ad litem." In re C.F., *Page 16 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 54. The trial court's choice to conduct an in camera interview is, therefore, a matter of discretion. Id. at ¶ 55. Assuming Bart's counsel should have opposed WCDJFS's motion for an in camera interview, he cannot demonstrate that he would have prevailed on that motion absent a demonstration that the trial court erred in conducting the in camera interview. Upon review of the record, we cannot say that a motion in opposition would have been granted. The trial court did not act in an "unreasonable, arbitrary, or unconscionable manner" in conducting the in camera interview. Id. at 56, citing Blakemore v.Blakemore (1983), 5 Ohio St.3d 217. Further, a decision not to oppose an in camera interview with Destiny may have been sound trial strategy, which we will not second-guess. "A trial counsel's choice of tactics must be given deference." In re Antonio C. Angelica C, 2004-Ohio-82, ¶ 58, citing State v. Nobles (1995), 106 Ohio App.3d 246, 276. Accordingly, Bart's counsel's first proposed assignment of error is not well-taken.
 {¶ 55} Second, Bart's appointed counsel raises as a potential argument that the trial court erred in denying Bart's motion to be released and transported from his incarceration in order to attend the disposition hearing. "A trial court has discretion to decide whether to proceed with a permanent custody hearing absent an incarcerated parent. State ex rel.Vanderlaan v. Pollex (1994), 96 Ohio App.3d 235, 236." In re JesseP., 6th Dist. No. L-04-1028, 2004-Ohio-3801, ¶ 49. Therefore, we will not reverse such a decision absent an abuse of discretion by the trial court. We have held repeatedly that "a parent's due process rights are not violated when: (1) the parent is represented at the hearing by *Page 17 
counsel, (2) a full record of the hearing is made, and (3) any testimony that the parent wishes to present could be presented by deposition."In re Joseph P., L-02-1385, 2003-Ohio-2217, ¶ 52; In re Jesse P., 6th Dist. No. L-04-1028, 2004-Ohio-3801, ¶ 51; In re Johnny H., 6th Dist. No. L-06-1044, 2007-Ohio-748, ¶ 21.
 {¶ 56} Bart was represented at the disposition hearing by effective counsel and a full record of the hearing was made. Unlike our cases cited above, the trial court did not offer Bart the opportunity for a deposition, but instead ordered Bart's counsel to obtain an affidavit from Bart to be entered at the disposition. In a similar instance, where the parent was incarcerated, we found no ineffective assistance of counsel for failing to obtain a deposition because it was unlikely that any testimony the parent may have presented would have militated against the termination of parental rights. In re Leo D. (Mar. 15, 2002), 6th Dist. No. L-01-1452. Likewise, we cannot say that the trial court abused its discretion in failing to secure a deposition for Bart or that he should have been conveyed from incarceration. Given the evidence in favor of terminating Bart's parental rights — his failure to provide support or an adequate permanent home, his prior terminations of parental rights, and his frequent incarcerations — it is highly unlikely that any testimony Bart would have given would have altered the outcome. Id. Bart personally wrote several letters to the trial court, which are included in the record. Further, given the fact that the trial court ensured that Bart's appointed counsel secured a thorough affidavit, we cannot say that Bart's due process rights were violated by refusing *Page 18 
him conveyance from incarceration. Accordingly, we find Bart's second proposed assignment of error not well-taken.
 {¶ 57} In sum, appellate counsel for Bart correctly determined that there was no meritorious appealable issue present in this case. Upon a thorough review of the record, we also independently find no grounds for a meritorious appeal. This appeal is, therefore, found to be without merit and is wholly frivolous. Bart's counsel's motion to withdraw is found well-taken and is hereby granted.
 {¶ 58} The judgment of the Williams County Court of Common Pleas, Juvenile Division, is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Williams County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, J., William J. Skow, P.J., CONCUR. *Page 1